# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| L. ASHLEY CARTER, ) ) Plaintiff, ) ) v. ) ) MICHAEL J. ASTRUE, ) COMMISSIONER OF ) SOCIAL SECURITY, ) ) Defendant. ) | Case No. 2:09CV00017<br><br>**OPINION**<br><br>By: James P. Jones<br>United States District Judge |

*Pamela A. Counts, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff L. Ashley Carter (also referred to in the record as Lauren A. Carter) filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DBI") and social security income ("SSI") pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Carter filed for benefits in March 2006, alleging she became disabled September 23, 2005, due to back pain, nerves, menstrual cramps, and a rotated pelvis. Her claim was denied initially and upon reconsideration. At her request, Carter received a hearing before an administrative law judge ("ALJ"), during which Carter, represented by counsel, and a vocational expert testified. The ALJ denied Carter's claim and the Social Security Appeals Council denied Carter's Request for Reconsideration. Carter filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Carter was twenty-one years old when she filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Carter graduated from high school and has worked in the past as a cashier, cook, hostess, and "sandwich artist." (R. at 65.) Carter has not worked since 2005, when she quit her job. Carter claims disability based on back pain, anxiety, and menstrual cramps.

In April 2006, Carter attempted to overdose on Tylenol in a self-described attempt to garner attention from her parents. Carter took about fifteen tablets of

Tylenol and washed it down with beer before driving herself to the local emergency room. At the hospital, she denied suicidal intentions or thoughts. After a three-day stay in the intensive care unit, Carter was discharged because she had no tangible physical maladies.

In June 2006, Carter sought help with her back pain at Community Physicians. A doctor of osteopathy, David Sheppard, who examined Carter, prescribed her anti-depressants and ordered an MRI and X ray of Carter's back. In both tests Carter's vertebrae and spine appeared normal and the examining physician noted that Carter did not have any spinal fractures, nor did she suffer from spondylosis or spondylolisthesis. Dr. Sheppard concluded that no objective evidence supported Carter's complaints of back pain and that her reported symptoms were "subjective." (R. at 333.)

Carter commenced regular psychiatric treatment in June 2006 when Uzma Ehtesham, M.D., diagnosed her with anxiety and depression. Dr. Ehtesham prescribed anti-depressants to Carter and saw her monthly for medication monitoring.

At the request of her attorney, Carter was evaluated by psychologist Ralph Ramsden, Ph.D. She was interviewed by Dr. Ramsden and underwent intelligence and personality tests. Dr. Ramsden noted that Carter appeared anxious, tense, and irritable. But, the psychologist also noted that Carter's allegations of intense pain did

not match her physical presentation. Dr. Ramsden opined that her presentation suggested "either malingering or extreme exaggeration of clinical problems to the point that it is difficult to interpret test data." (R. at 429.) He suggested Carter pursue further psychological treatment, but noted that "her willingness to cooperate and consistently participate is suspect." (*Id*.)

The ALJ found that Carter had severe impairments, which limited her ability to perform basic work activities. The ALJ concluded, however, that Carter's statements concerning the intensity, persistence and limiting effect of her symptoms were not credible and Carter's back pain and mental impairments did not meet or equal the criteria of a disabling injury in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ concluded that Carter could not return to her past work as a fast food worker, but Carter could perform a full range of light work and therefore, was not disabled.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DBI and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*, at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through

application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Carter contends that the ALJ erred because she "failed to clearly state whether she considered that Carter's substance use disorder and back pain caused significant work related restrictions and were severe." (Pl.'s Br. 6.) The record clearly refutes this allegation.

In her opinion, the ALJ noted that Carter suffered from anxiety and depression, severe substance use disorder, and a degree of musculoskeletal difficulty. The ALJ then concluded that these ailments "cause significant functional limitations and stated that Carter's impairments could produce the symptoms that Carter alleged, but that Carter's statements about the "intensity, persistence, and limiting effects" were not credible given Carter's testimony about her daily life and her abilities. Substantial

evidence exists in the record to support the conclusion that the ALJ weighed Carter's history of substance abuse and then, made a determination as to how it impacted Carter's ability to work.

Carter's second argument is that the ALJ erred by failing to give controlling weight to the opinion of Dr. Ehtesham. I disagree. The record contains substantial evidence to support the ALJ's conclusion that Dr. Ehtesham's opinion was not supported by clinical and laboratory evidence, and that the opinion was inconsistent with other evidence in the record.

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). The ALJ may give a treating physician's opinion greater weight than other evidence, but the ALJ also has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

On forms completed for the Virginia Department of Social Services, Dr. Ehtesham opined that Carter had serious limitations in her ability to make occupational, performance, and social adjustments. But these conclusions do not coincide with Dr. Ehtesham's treatment notes in which she stated that Carter had a

normal appearance, an intact memory, and, at times, appeared to be doing "fairly well." (R. at 455.)

Contrary to Carter's assertion, Dr. Ramsden's opinion does not support these findings. Dr. Ramsden concluded that Carter could maintain her personal appearance, follow simple job instructions, and focus without difficulty. Dr. Ramsden also determined that Carter's claims of physical pain did not correspond with her appearance or physical demeanor during the consultation. Ultimately, Dr. Ramsden concluded that a true evaluation of Carter would be difficult since her presentation suggested "malingering or extreme exaggeration of clinical problems . . . ." (R. at 429.)

In addition to the evidence discussed above, the findings of two state agency physicians who reviewed Carter's file also conflict with Dr. Ehtesham's opinions. Unlike Dr. Ehtesham, neither state agency physician found Carter suffered from a severe mental impairment. And, only one state agency physician determined that Carter's mental impairments mildly limited her ability to function. Thus, these opinions, coupled with the conclusions of Dr. Ramsden, offer substantial evidence to support the ALJ's conclusion.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: September 3, 2010

/s/ JAMES P. JONES
Chief United States District Judge